IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIANN BOURLAND,<br><br>Plaintiff,<br><br>v.<br><br>UNIFIED FIRE AUTHORITY; RILEY PILGRIM, individually and in his official capacity; EMBRET FOSSUM, individually and in his official capacity; LAYNE HILTON, individually and in his official capacity; DOES 1-20,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00525-TC<br><br>Judge Tena Campbell |

Defendants Unified Fire Authority (UFA), Riley Pilgrim, Embret Fossum, and Layne Hilton (collectively, Defendants), move to dismiss Plaintiff Mariann Bourland's Complaint. (Mot. Dismiss, ECF No. 10.) For the reasons discussed below, the court grants their motion.

## BACKGROUND

In 2020, the man Ms. Bourland describes as her partner passed away. (Compl. ¶¶ 32–33, ECF No. 1.) He was employed by UFA. (Id. ¶ 32.) The gravamen of Ms. Bourland's Complaint is that after his death she became "the subject of internal discussions, planning activities, and institutional actions undertaken by UFA personnel" that caused her to suffer emotional, dignitary, and reputational-related harms. (Id. ¶¶ 34, 62, 71, 82.) On this basis, she brings individual and official capacity claims against Mr. Pilgrim, Mr. Fossum, and Mr. Hilton (the Individual Defendants) and unnamed Does, and a municipal liability claim against UFA.

The alleged "governmental action[s]" with which Ms. Bourland takes issue began "in connection with funeral-related planning and security concerns," (id. ¶¶ 35, 37), i.e., some of UFA's efforts were aimed at "ensur[ing] that personnel could identify [her] should she appear at the funeral-related event," (id. ¶ 42.) These efforts included: UFA personnel obtaining photos of Ms. Bourland and incorporating them "into identification cards distributed for identification purposes"; "discuss[ions]" about "distributing" the cards "among firefighters, supervisors, security personnel, and law-enforcement personnel"; and discussions about "who would be responsible for identifying [her] and communicating her presence to others" should she attend the event. (Id. ¶¶ 38–43.) She also alleges there was a "'law-enforcement piece' of the operation," and "UFA personnel coordinated with law-enforcement officers and security personnel regarding [her] anticipated attendance at the funeral-related event." (Id. ¶¶ 44–45.)

Ms. Bourland also alleges that UFA personnel characterized her as "very unstable" and "dangerous, and a potential threat to herself or others." (Id. ¶¶ 47, 49.) UFA lacked "competent evidence supporting these characterizations," yet "relied upon [them] in making decisions" about inter alia "identification efforts" and "operational responses directed toward [her]." (Id. ¶¶ 48, 50.) She alleges that during Fall 2021, the "Defendants generated written reports concerning [her]." (Id. ¶ 51.) They characterized her "mental condition, dangerousness, emotional stability, and [as an] alleged threat to others," and individuals who were unqualified "to diagnose [Ms. Bourland]" made "hospitalization claims, psychiatric observations, and other mental-health-related assertions" without basis. (Id. ¶¶ 52–55.) The Defendants "circulated, maintained, and relied upon those reports through official channels" but "failed to verify [their] accuracy" or to "correct, retract, amend, remove or otherwise remedy … [the] false information" in them even after Ms. Bourland went through various channels "to obtain accountability and correction." (Id.

¶¶ 56–60, 64.) The Defendants "disseminated" this information via "official reports, institutional communications, command-level discussions, governmental channels and operational planning activities" and "transformed" it into "action by coordinating identification efforts, distributing [Ms. Bourland]'s photograph, creating and disseminating identification materials, coordinating with law-enforcement personnel, implementing security measures, and engaging in operational planning directed" at Ms. Bourland. (Id. ¶¶ 65, 67.)

As a result, Ms. Bourland "suffered severe emotional distress, humiliation, anxiety, reputational injury, stigma, loss of dignity, and continuing damages." (Id. ¶ 62.) On June 5, 2026, she filed suit, bringing three § 1983 claims.[1] 42 U.S.C. § 1983. First, a due process claim alleging she was "deprived … of protected liberty interests without … constitutionally adequate process." (Compl. ¶¶ 62[2]–71, ECF No. 1.) Second, a "Fourteenth Amendment due process" claim "based upon fabrication and maintenance of false government records." (Id. ¶¶ 72–82.) Third, a Monell claim alleging "[t]he constitutional violations described [in the complaint] were caused by customs, practices, ratification, failures to supervise, failures to train, institutional decision-making, and deliberate indifference attributable to [UFA]." (Id. ¶ 84; see id. ¶¶ 83–94.)

## LEGAL STANDARD

On a motion to dismiss, including one seeking dismissal on qualified immunity grounds, the court "accept[s] as true all well-pleaded facts, as distinguished from conclusory allegations, and view[s] those facts in the light most favorable to the nonmoving party." Montgomery v. Cohn, No. 23-1101, 2024 WL 1739290, at *2 (10th Cir. Apr. 23, 2024) (quoting Moya v.

---

[1] Because she does not specify otherwise, the court construes her claims as brought against all the Defendants. Shell v. Am. Fam. Rts. Ass'n, 899 F. Supp. 2d 1035, 1046 n.6 (D. Colo. 2012).

[2] The Complaint includes two paragraphs numbered "62." This citation references the second.

Schollenbarger, 465 F.3d 444, 455 (10th Cir. 2006)). The court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." Id. (quoting Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995)).

## ANALYSIS

The court grants the Defendants' motion and dismisses all of Ms. Bourland's claims.

### I. Qualified Immunity.

The court's analysis begins with qualified immunity, which "should [be] resolve[d] … 'at the earliest possible stage in litigation.'" Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001) (citations omitted); Wood v. Moss, 572 U.S. 744, 755 n.4 (2014) (citation omitted). "[D]istrict courts may grant motions to dismiss on the basis of qualified immunity." Fuqua v. Santa Fe Cnty. Sheriff's Off., 157 F.4th 1288, 1301 (10th Cir. 2025) (citation omitted), cert. denied sub nom. Zook v. Fuqua, No. 25-1108, 2026 WL 2976216 (U.S. Oct. 5, 2026). "[D]efendants asserting qualified immunity on a Rule 12(b)(6) motion," however, "face 'a more challenging standard of review than would apply on summary judgment.'" Id. (citation omitted). "On a motion to dismiss based on qualified immunity, the ultimate question is 'whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the] defendant[s'] alleged misconduct.'" Id. at 1297 (quoting Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011)).

"To survive a qualified-immunity defense at this stage in the litigation, 'the plaintiff must [have] allege[d] facts sufficient to show (assuming they are true) that' (1) the 'defendant plausibly violated their constitutional rights, and that' (2) 'those rights were clearly established at the time.'" Id. at 1301 (quoting Brown v. City of Tulsa, 124 F.4th 1251, 1265 (10th Cir. 2025)). "[T]he complaint must include enough factual content for 'the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "If the plaintiff fails to satisfy either prong … [her] suit fails. Accordingly, [courts] have 'discretion to decide the order in which these two prongs should be addressed.'" Hemry v. Ross, 62 F.4th 1248, 1253 (10th Cir. 2023) (quoting Soza v. Demsich, 13 F.4th 1094, 1099 (10th Cir. 2021)); see Fuqua, 157 F.4th at 1304. The court begins with the second, "clearly established" prong. It finds that Ms. Bourland fails to allege facts sufficient to show that the constitutional rights purportedly violated were "clearly established."

Where "defendants have asserted a qualified-immunity defense, it is the plaintiff's burden to show, 'by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits' that the right allegedly violated was clearly established at the time of the conduct at issue." Beattie v. Smith, 543 F. App'x 850, 855 (10th Cir. 2013) (quoting Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008)). "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Est. of Jensen by Jensen v. Clyde, 989 F.3d 848, 858 (10th Cir. 2021) (quoting Quinn v. Young, 780 F.3d 998, 1004–05 (10th Cir. 2015)); accord Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006). "[T]here need not be precise factual correspondence between earlier cases and the case at hand." Anderson, 469 F.3d at 913. "[A] general constitutional rule that has already been established can 'apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.'" Id. (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). "[A] right is clearly established when a precedent involves materially similar conduct or applies with obvious clarity to the conduct at issue." Apodaca v. Raemisch, 864 F.3d 1071, 1076 (10th Cir. 2017) (cleaned up). With this requirement, "we allow personal liability for public officials only

when our precedent puts the constitutional violation 'beyond debate.'" Id. (quoting White v. Pauly, 580 U.S. 73, 79 (2017)).

Ms. Bourland does not show that the "rights the defendant[s] allegedly violated were clearly established at the time of the conduct at issue." Archuleta, 523 F.3d at 1283 (citation omitted). As she describes it, Count I alleges a laundry list of "governmental conduct":

> that government officials … used [Ms. Bourland's] image in governmental identification materials, distributed those materials for identification purposes, coordinated with law-enforcement and security personnel, assigned personnel responsibility for identifying [her] and communicating her presence, developed operational plans concerning her anticipated presence, monitored for her appearance, generated official reports containing psychiatric and dangerousness assertions, circulated those reports through official channels, and continued to maintain and rely upon the information.

(ECF No. 11 at 13). Similarly, she says that Count II alleges that the Defendants,

> created, maintained, circulated, approved, adopted, ratified, and relied upon governmental records containing unsupported assertions concerning [Ms. Bourland]'s mental health, emotional stability, dangerousness, and alleged threat to herself or others … circulated those records through official governmental channels, failed to verify the information, failed to obtain competent medical confirmation, and failed to correct or remove unsupported information after learning of its unreliability [and] … relied upon the records in planning activities, identification efforts, law-enforcement coordination, operational decision-making, and actions directed toward her.

(Id. at 15 (citations omitted)). Missing is any authority establishing that the rights Ms. Bourland claims the Defendants violated by engaging in this conduct were (or are) clearly established.

Ms. Bourland cites Owen v. City of Independence in her brief, and notes that it confirms that a qualified immunity defense does not provide municipal immunity. (ECF No. 11 at 20 (citing 445 U.S. 622, 638 (1980).) In Owen, a Chief of Police "was discharged … without notice of reasons and without a hearing in violation of his [due process rights]." 445 U.S. at 630. Owen neither involves materially similar conduct nor applies with obvious clarity here, where no discharge-like actions were taken towards Ms. Bourland. See Apodaca, 864 F.3d at 1076.

Ms. Bourland's other cases also provide no support. The Paul v. Davis plaintiff brought a due process claim "grounded upon his assertion" that a flyer distributed to about 800 merchants around Louisville, which included "the phrase 'Active Shoplifters' … at the head of the page" and the plaintiff's name and photograph elsewhere, "impermissibly deprived him of some 'liberty' protected by the Fourteenth Amendment." 424 U.S. 693, 694–95, 697 (1976). The Court "[held] that the interest in reputation" was "neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." Id. at 712. It concluded that defamation of the plaintiff, "standing alone and apart from any other governmental action with respect to him" did not state a § 1983 claim. Id. at 694. The Paul plaintiff could not "assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment," meaning the flyers, "however seriously they may have harmed [his] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." Id. Paul thus cuts against Ms. Bourland, who has not asserted denial of any right granted to her by law.

So too with the other authority relied upon by Ms. Bourland. (ECF No. 11 at 13, 15 (citing Gwinn v. Awmiller, 354 F.3d 1211, 1216, 1223–24 (10th Cir. 2004); Al-Turki v. Tomsic, 926 F.3d 610, 617–19 (10th Cir. 2019); and Truman v. Orem City, 1 F.4th 1227, 1236–37 (10th Cir. 2021).) Ms. Bourland identifies that Truman "recognizes a Fourteenth Amendment … claim where a defendant knowingly fabricates evidence, the fabricated evidence is used against the plaintiff, and that use causes a deprivation of liberty." (Id. at 15 (citing 1 F.4th at 1236–37) (emphasis added).) Ms. Bourland's conclusory allegations aver that the Defendants engaged in multiple actions, i.e., "fabricati[ng], maintain[ing], circulat[ing], and rel[ying] upon false governmental records," but she alleges no facts from which it can be inferred that she experienced a deprivation of liberty caused by the use of fabricated evidence, let alone non-

conclusory ones. (See, e.g., Compl. ¶ 81, ECF No. 1.) Truman consequently did not make it "sufficiently clear" that what was done here violated Ms. Bourland's clearly established rights. See Anderson, 469 F.3d at 913 (10th Cir. 2006) (quoting Hope, 536 U.S. at 739).

Meanwhile, Gwinn says that "a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her 'good name, reputation, honor, or integrity,' must [among other things] demonstrate that: … the plaintiff experienced some governmentally imposed burden that 'significantly altered [his or] her status as a matter of state law.'" 354 F.3d at 1216 (citations omitted). Al-Turki arrives at a similar conclusion. 926 F.3d at 617 ("What is needed in addition to stigma …. is some change in legal status."). Ms. Bourland does not allege any facts that indicate the government imposed a burden that significantly altered her status. This precedent, consequently, does not put the purportedly rights-violating conduct of the Defendants "beyond debate." Apodaca, 864 F.3d at 1076 (quoting White, 580 U.S. at 79).

Ultimately, for the at-issue rights to be "clearly established" the unlawfulness of the Individual Defendants' conduct must be apparent "in the light of pre-existing law." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Examined in this light, it is not apparent the Individual Defendants' conduct was unlawful. This is sufficient to grant them qualified immunity.

The court notes though that the Individual Defendants are also entitled to qualified immunity because Ms. Bourland fails to allege each defendant's "personal[] participat[ion] in the alleged violation[s]." Escobar v. Reid, 668 F. Supp. 2d 1260, 1290 (D. Colo. 2009) (citing Bennett v. Passic, 545 F.2d 1260, 1262–63 (10th Cir. 1976)); see also Robbins v. Oklahoma, 519 F.3d 1242, 1249–50 (10th Cir. 2008). A plaintiff "must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated [her] clearly established constitutional rights. Failure to make this

showing [will] doom[ a] plaintiff['s] § 1983 … claims and entitle[] defendants to qualified immunity." Pahls v. Thomas, 718 F.3d 1210, 1228 (10th Cir. 2013). Alleging that a defendant is a decisionmaker is insufficient. E.g., Loma v. City & Cnty. of Denver, No. 21-cv-02214, 2023 WL 2574377, at *9 (D. Colo. Mar. 20, 2023). Ms. Bourland alleges the Individual Defendants "occupied supervisory, command-level, or policymaking positions within [UFA]," and that they "and other supervisory personnel participated in, approved, authorized, directed, implemented, ratified, maintained, or knowingly permitted the conduct described [in the Complaint]." (Compl. ¶¶ 22, 86, ECF No. 1). She alleges no actions that particular Defendants took or had supervisory authority over, let alone rights-violative ones, and her conclusory allegations are inadequate.

Accordingly, the court dismisses Ms. Bourland's first and second claims as brought against the Individual Defendants in their individual capacities.

**II. Failure to State a Claim.**

Ms. Bourland also brings her claims against the Individual Defendants in their official capacities and a Monell claim.[3] These claims fail. One reason they are unsuccessful is because she fails to state her § 1983 due process claims, (see Compl. ¶¶ 62–82, ECF No. 1 (Counts 1 and 2)),[4] and a Monell claim requires an underlying constitutional violation, Crowson v. Washington

[3] Because "[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works," courts "treat [official capacity] claim[s] as [] Monell claim[s]." Est. of Newman v. Bd. of Cnty. Commissioners of Cnty. of Montezuma, No. 22-CV-01763, 2025 WL 948379, at *8 (D. Colo. Mar. 28, 2025) (quoting Pietrowski v. Town of Dibble, 134 F.3d 1006, 1009 (10th Cir. 1998)). The court does so herein. (See ECF No. 11 at 22 (official-capacity claims as duplicative).) It also notes that qualified immunity is "unavailable" in an "official-capacity" action. See Kentucky v. Graham, 473 U.S. 159, 166–67 (1985).

[4] This failure is another reason the Individual Defendants are entitled to qualified immunity on the individual capacity claims. See Fuqua, 157 F.4th at 1301 (requiring "facts sufficient to show (assuming they are true) that' … 'defendant plausibly violated [plaintiff's] constitutional rights" for claims to survive qualified-immunity defense brought via a motion to dismiss (cleaned up)).

Cnty., 983 F.3d 1166, 1191 (10th Cir. 2020) (citations omitted); Monell v. Dep't of Social Servs., 436 U.S. 658, 691–92 (1978).

Ms. Bourland's first § 1983 claim is for "deprivation of liberty interest without due process." (Compl. ¶¶ 62–71, ECF No. 1.) But as the Defendants point out, Ms. Bourland does not allege any facts from which the court can glean that she has been deprived of such an interest. (See ECF No. 10 at 3, 8–11.) Ms. Bourland alleges vague government actions and reputation-based injuries, but government action or statements alone do not amount to a deprivation of liberty, nor does an injury to reputation alone. See Paul, 424 U.S. at 694, 710–12.

Her second § 1983 claim is for "fabrication and maintenance of false government records," that resulted in reputational and emotional harm. (Compl. ¶¶ 72–82, ECF No. 1.) The law requires more. "To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty." Truman, 1 F.4th at 1236 (citations and footnote omitted); Livingston v. Unified Gov't of Wyandotte Cnty., No. 25-3041, 2026 WL 1021159, at *2 (10th Cir. Apr. 15, 2026) ("[A] fabrication-of-evidence claim … requires the plaintiff to show that the use of the fabricated evidence deprived the plaintiff of liberty." (citing Truman, 1 F.4th at 1236)). A plaintiff must allege more than just that "the defendant knowingly fabricated evidence, [and that] the fabricated evidence was used against the plaintiff," she must (among other things) allege that "the use of the fabricated evidence deprived the plaintiff of liberty." Truman, 1 F.4th at 1236 (footnotes omitted). Ms. Bourland has not alleged any liberty deprivation. Her claim fails. Her Monell claim fails with it. See Butler v. City of Prairie Vill., 172 F.3d 736, 747 (10th Cir. 1999).

Ms. Bourland's municipal liability claims also fail due to several other pleading deficiencies. First, she has not alleged an official policy or custom with a causal link to the

constitutional violations alleged, even though a Monell claim requires a plaintiff to do so. E.g., Myers v. Okla. City Bd. of Cnty. Commr's, 151 F.3d 1313, 1316 (10th Cir. 1998). Ms. Bourland says the "constitutional violations [in the complaint] were caused by customs[ and] practices," and points to, for example, "coordinated actions" taken by "multiple UFA officials utilizing official resources." (Compl. ¶¶ 84, 87, ECF No. 1.) These are "conclusory assertions, which do not suffice." George v. Unified Gov't of Wyandotte Cnty./Kan. City Kan., No. 2:22-cv-2309, 2023 WL 1963953, at *3 (D. Kan. Feb. 13, 2023) (collecting cases).

Second, Ms. Bourland alleges "policymaker[s]" engaged in misconduct and "decision-making," and they "ratifi[ed]" subordinates' misconduct. (See Compl. ¶¶ 22, 84, 86, ECF No. 1). But to state a Monell claim based on final policymaker decisions "a plaintiff must allege facts indicating that the policymakers had 'final policy making authority … on the basis of a decision specific to a particular situation.'" Marshall v. Dix, 640 F. Supp. 3d 1033, 1068 (D. Colo. 2022) (quoting Murrell v. Sch. Dist. No. 1, 186 F.3d 1238, 1250 (10th Cir. 1999)). Ms. Bourland has alleged only that the Individual Defendants were in policymaking positions and had "supervisory and command-level capacity." (Compl. ¶¶ 8–9, 22, ECF No. 1.) This is too conclusory to discern whether the Individual Defendants are "policy-making official[s]." See Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189–90 (10th Cir. 2010).

Third, although Ms. Bourland invokes a failure-to-train theory, to successfully do so, a "plaintiff must show either 'a pattern of prior similar misconduct' or that the need for training was 'so obvious' and the current training's inadequacy 'so likely to result in the violation of constitutional rights' that policymakers demonstrated deliberate indifference." Phelps v. Kansas, No. 23-2206, 2026 WL 863783, at *15 (D. Kan. Mar. 30, 2026) (quoting Waller v. City & County of Denver, 932 F.3d 1277, 1288 (10th Cir. 2019)). She does not allege "a pattern of

similar misconduct … that would suggest the [municipal] defendants routinely behaved as alleged." Id. at *16. She also does not allege any facts that would indicate that the actions and communications that occurred here are "routine[]" or "highly likely to recur" so that inadequate training "could very well lead to highly predictable constitutional violations." Delaney v. City of Tulsa, Oklahoma, 766 F. Supp. 3d 1180, 1187 (N.D. Okla. 2025), appeal dismissed sub nom. Delaney v. Russell, No. 25-5034, 2025 WL 2607681 (10th Cir. June 10, 2025). Nor does she identify what training was received, or needed for UFA employees to be better equipped—or how it would have helped prevent the alleged violations. "Such bare allegations" are insufficient to state a failure-to-train claim. Phelps, 2026 WL 863783, at *15.

Finally, the Complaint alludes to a failure-to-supervise. (Compl. ¶¶ 30–31, 84, 89, 93, ECF No. 1). But "complaints such as this one that fail to allege specific facts regarding how supervision was deficient, or how any allegedly inadequate supervision caused a plaintiff's injury, fail[] to state a claim." Est. of Holmes ex rel. Couser v. Somers, No. 18-1221, 2021 WL 236080, at *6 (D. Kan. Jan. 25, 2021) (citing Waller, 932 F.3d at 1289).

**III. Dismissal Without Prejudice.**

Having found that the Defendants are "subject to qualified immunity, the court may dismiss with or without prejudice." Encinias v. N.M. Corr. Dep't, 659 F. Supp. 3d 1227, 1245 n.9 (D.N.M. 2023), aff'd, No. 23-2052, 2024 WL 4380477 (10th Cir. Oct. 3, 2024) (citations omitted). The court has similar discretion where it dismisses under Rule 12(b)(6). See, e.g., Sanchez v. Torrez, 173 F.4th 1202, 1225 n.3 (10th Cir. 2026) (noting court "may specify" Rule 12(b)(6) dismissal is without prejudice). Dismissal with prejudice is appropriate where amendment would be futile. Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006); see Houlin v. Forsey, No. 2:24-cv-00293, 2025 WL 691373, at *10 & n.130 (D. Utah

Mar. 4, 2025). Here, futility is a close question in part because Ms. Bourland's allegations are so deficient that "the [c]ourt simply does not have enough information to decide if another complaint would be futile." Norman v. Stallings, No. CV 19-773, 2020 WL 2085147, at *2 (D.N.M. Apr. 30, 2020). Still, Ms. Bourland has never amended her pleadings and the court is not persuaded an attempt would be futile. Her claims are dismissed without prejudice. See Sullivan v. DaVita Healthcare Partners, Inc., No. 18-cv-01589, 2018 WL 4635965, at *3 (D. Colo. Sept. 27, 2018), aff'd, 780 F. App'x 612 (10th Cir. 2019) ("[D]ismissals without prejudice typically result when the party has not yet been given an opportunity to cure its defective pleading with an amendment."); Encinias, 659 F. Supp. 3d at 1245 n.9 (D.N.M. 2023) (dismissing with prejudice where further amendment would likely not "clearly establish the law on point"); Carraway v. State Farm Fire & Cas. Co., No. 22-1370, 2023 WL 5374393, at *8 n.6 (10th Cir. Aug. 22, 2023) ("[The Tenth Circuit has] cautioned[ that] '[a]s a general matter, a party should be granted an opportunity to amend … prior to a dismissal with prejudice.'" (quoting Sheldon v. Vermonty, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001))).[5]

**IV. Leave to Amend.**

In addition to opposing dismissal, Ms. Bourland seeks leave to amend. (E.g., ECF No. 11 at 4.) Because dismissal and leave to amend are "separate concepts," see Brereton, 434 F.3d at

[5] The court does not reach the Defendants' statute of limitations argument, (ECF No. 10 at 5–8), because it has resolved their motion on other grounds, see Sw. Four Wheel Drive Ass'n. v. Bureau of Land Mgmt., 363 F.3d 1069, 1071 (10th Cir. 2004) (declining to reach statute of limitations question where plaintiff was unable to state a claim); Est. of Janota v. Love Cnty. Bd. of Comm'rs, 830 F. Supp. 3d 1133, 1140 (E.D. Okla. 2026) (declining to review statute of limitations issue where court dismissed claims based on grounds including failure to state a claim and immunity). The court agrees with the Defendants that it "need not consider" Exhibit 1 to the Motion to Dismiss to resolve the non-statute of limitations arguments. (ECF No. 10 at 5; Ex. 1 to Mot. Dismiss, ECF No. 10-1.) In reaching its decision as to dismissal, the court did not consider that exhibit. See Montgomery, 2024 WL 1739290, at *2.

1219, the court's determinations thus far do not resolve the issue of amendment. Neither does Rule 15 because the deadline for Ms. Bourland to amend as a matter of course has passed. Fed. R. Civ. P. 15(a)(1); (ECF No. 9, 9-1–9-3 (waivers of service filed July 27, 2026); ECF No. 10 (motion to dismiss filed September 23, 2026)). In any event, "[a] party may not make a motion … in a response." DUCivR 7-1(a)(3). "Any motion must be separately filed." Id. Ms. Bourland's request, which is in her opposition, is denied at the present time. See Garman v. Campbell Cnty. Sch. Dist. No. 1, 630 F.3d 977, 986 (10th Cir. 2010). See generally Long v. Blue Shield of Cal., No. 24-cv-03352, 2026 WL 1732989 (D. Colo. June 16, 2026) (discussing timing and process in context of motion to reopen case to amend complaint).

Accordingly, the court ORDERS the following:

1. Defendants' motion to dismiss (ECF No. 11) is GRANTED.

2. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

DATED this 6th day of November, 2026.

BY THE COURT:

Tena Campbell

Tena Campbell
United States District Judge